SCOTT et al. v. McCLUNG, Mayor, et al.

(Supreme Court, Appellate Division, Second Department. May 1, 1912.)

MUNICIPAL CORPORATIONS (§ 292*)—PUBLIC IMPROVEMENTS—PETITION—NECESSITY.

　　Under Newburgh City Charter, c. 6, § 1, providing that, if the city council determine to make the street improvement "petitioned for," they may let the contract and apportion the cost, the city council cannot, except upon petition of the owners of one-third of the lineal foot frontage of the street to be improved, as the petition is described in a prior part of such section, make a contract for a street improvement.

　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 768–772; Dec. Dig. § 292.*]

Appeal from Special Term, Orange County.

Action by J. Bradley Scott and others against Benjamin McClung, as Mayor of the City of Newburgh, and others. From an order refusing to continue, and dissolving, a temporary injunction, plaintiffs appeal. Reversed.

· Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

Howard Thornton (W. F. Cassedy, of Newburgh, and J. B. Scott, on the brief), for appellants.

Henry Kohl, of Newburgh, Corp. Counsel, for respondents.

PER CURIAM. This is an action for injunctive relief against the mayor and city council of the city of Newburgh. Its purpose is to enjoin the awarding and executing of a contract for the paving of one of the public streets of said city. On commencing the action, a temporary injunction, with an order to show cause why it should not be continued during the pendency of the trial and determination of the action, was granted. Upon the hearing on the return of the order to show cause, the Special Term declined to continue the temporary injunction, which it dissolved. From the order accordingly entered this appeal is taken.

Two questions requiring consideration are involved. The city council of the city of Newburgh, of its own motion, resolved to pave Grand street its entire length from Washington street to Leroy place. It is contended that, under the provisions of section 1 of title 6 of the charter of said city, its common council is without power to direct or make such improvement, unless it is petitioned for by the owners of at least

---

one-third of the lineal feet frontage on the street to be paved. The provision referred to is as follows:

"Said city council may, upon its own motion, and shall, upon petition of the owners of one-third of the lineal feet frontage petitioning for the improvement of any street or streets or section of a street, cause a detailed statement to be prepared showing the amount needed for such improvement of any street or streets and shall thereupon cause to be published in two newspapers in said city daily for at least two weeks a statement that at a time and place to be therein specified, it will meet to make a final determination thereon. Such notice shall contain a brief description of the character and location and extent of the improvement. If the city council shall finally determine to make the improvement petitioned for, it shall record an order for such improvement in its minutes, and shall thereupon advertise for and let the necessary contract therefor, and shall apportion the cost thereof upon the real estate fronting upon said street or section of a street then to be improved in proportion to the benefit to the respective lots and parcels thereof, first deducting the share thereof imposed upon the city."

It is conceded that all requirements of the statute were complied with (except that there was no petition presented for the improvement); and it is argued that the language used in the section, "If the city council shall finally determine to make the improvement petitioned for," limits and confines the right of such council to order an improvement, and let the contract therefor to one which it has received the required petition for.

In most instances the power to make a contract would be implied from the power given expressly to prepare a statement of the amount of money required for the proposed improvement, to hold a public hearing, and to make a final determination. The fact, however, must be borne in mind that the charters of small cities in general are restrictive on the subject of public expenditures, and that the power to make such expenditures is in general confined to those which are expressly conferred, rather than to include those which may be assumed from implication. In the present instance, giving effect to all the words used, it would seem clear that, while the common council is vested with entire power to ascertain the cost of an improvement, to hold a hearing, and to determine the propriety of the expenditure, no express power is conferred to spend the money by making a contract for the improvement, unless at least one-third of those upon whom the expense of the improvement falls have indicated their approval by making a petition.

The learned justice who rendered the decision below states in his opinion as follows:

"I am satisfied that the Legislature in amending the city charter intended to give the city council authority, upon its own motion, not only to make a detailed statement of the cost of a proposed street improvement, hold a hearing thereon, and decide upon the proposition, but, as well, to make a contract therefor."

Neither the papers on appeal nor the respective briefs of counsel furnish any clue to when, how, or under what circumstances the charter has been amended so as to confer the power referred to. It may be that the literature relating to the amendment (if any), such as reports and resolutions, as well as the extent and nature of the amendment

itself, may disclose that the learned Special Term was right in its conclusion. Without passing on this question until the case has been tried and the facts disclosed, it is quite apparent that there is sufficient doubt on the subject to require the preservation of the existing status until a trial has been had.

The second question arises under that portion of subdivision 2 of said section reading as follows:

"But after any street, or section of a street shall have been once graded, or be in process of grading, according to the grade line heretofore fixed by order of the city council, or which may hereafter be fixed by said board, the grade of the same street or section shall not be changed, except upon the written application of the persons owning a major part of the property adjoining the same."

It is contended that the improvement ordered required such a change of the existing grade of Grand street as to bring it within the prohibition of subdivision 2 quoted, and, no written application therefor having been made, the council was without power to order or contract therefor. The learned corporation counsel concedes that the grade of Grand street cannot be changed except upon such written application, but contends that there is no change of grade sufficient to bring the case within the prohibition of the section; that the change made is a minor one and a material and necessary incident to the permanent improvement of the street, which the council is authorized to make on its own motion, and, being vested with such authority, its exercise cannot be prevented under the provisions of subdivision 2 because slight changes in the surface of the street, or in the grade thereof, are necessary to the proper paving of the street. The Special Term sustained this contention, holding that:

"The grade lines of Grand street will not be substantially changed by the contemplated work. The changes will be such only as are reasonably necessary to the proper repaving of the street, and will not substantially alter the present lines or work any injury to the adjoining property."

It may be that upon the trial of the case facts may be presented showing that the city council has exceeded its authority and is without power to make the proposed improvement, because of the change of grade involved, but we are unwilling to say that upon the papers presented the conclusions of the learned Special Term are unwarranted. The trial can clearly establish whether the change of grade is substantial or incidental only.

The order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

JENKS, P. J., concurs in the result.